Lee, J.
This was an application on behalf of the appellee, S. M. Galiahue, to the County court of Jackson, under the act of assembly, for leave to erect a dam across Big Sandy creek in said county, for the purpose of working a water grist mill and saw mill. The applicant claimed to „be the owner of the banks on both sides of said creek, at a place specified, and prayed a writ of ad quod damnum for the purpose of erecting such mills and dam on said lands. The writ was awarded, and an inquest taken, which was returned to the court. The appellant, Thomas Mairs, and four other persons named, appeared in court, and upon their motion were admitted as defendants to contest the application ; and they moved the court to quash the proceedings ; which motion was overruled by the court; and the defendants excepted. They also moved the *96 court to continue the cause, on the ground of the absence of a person who would be an important and material witness on their behalf, if present. This motion the court also overruled; and the defendants excepted. The court thereupon proceeded to hear the case, and after having heard the evidence and weighed all the circumstances, decided in favor of the application, and gave the leave asked for; providing and stipulating, however, in the order, that the applicant, for preventing any impediment to the crossing of the creek where a certain road passed, should keep a ferry boat for the public convenience where the said road crossed. From this order granting the leave aforesaid, Mairs and Kearny applied for and obtained an appeal to the Circuit court of said county of Jackson. And the cause coming on to be heard in that court on the transcript of the record of the proceeding in the County court, and also upon the testimony of the witnesses introduced and examined in the Circuit court by the parties, that court was of opinion that leave to erect said dam was properly given by the County court, and the judgment of the County court was affirmed. And to this judgment of affirmance Mairs obtained a supersedeas from this court.
Several objections have been urged in this court to the regularity of this proceeding, which will be noticed in the order in which they were taken.
The first objection is, that the petition sets forth that the applicant “ owned the banks” on both sides of the creek, instead of alleging that he “ had the fee simple property in the land on both sides of the stream.” The petition in this case was, as it properly might have been, ore tenus; Mead v. Haynes, 3 Rand. 33; and the terms in which its purport and effect are noted on the record should not, perhaps, be the subject of very nice criticism. The terms “ owner of the land,” “ having the fee simple property in the lands,” *97 “ proprietor of the land,” seem to be used indifferently in the act, and to be intended to have the same import. And the expression “ owned the banks on both sides of the creek,” evidently meant that he owned the land on the banks. Indeed, where the petition, as noted, states that he desired the writ of ad quod damnum to issue, it says, “ for the purpose of erecting a water grist mill and saw mill on said lands. Taking the whole together, no doubt can arise as to the meaning intended; and it appears also in a subsequent part of the record, the inquest of the jury, that the applicant was the owner of the lands on both sides of the creek at the place in question.
It is argued that a river properly consists of water, bed and banks; and that if one own the banks only, he does not own the water or the bed. The act, however, does not speak of property “ in the bed” of the stream, but only in the land on both sides ; and it has long since been decided that where the applicant owns the land on both sides of the stream, the presumption is that the bed of it belongs to him also, and therefore it is unnecessary for him to set it forth in his application. Wroe v. Harris, 2 Wash. 126 ; Neale v. Cogar, 1 A. K. Marsh. R. 589. I think there is nothing in this objection.
The next is, that the petitioner states he desired a writ of ad quod damnum to issue for the purpose of erecting a water grist mill, &c., whereas the statute says, “ when any person desiring to build a water grist mill,” &c. The difference is merely verbal and not material, the party’s intention to build a mill, &c. being sufficiently and plainly expressed.
It is contended that the inquest is defective, and exception is taken both to its frame and structure and to the language in which it is expressed. It may be true that it is not drawn with very great clearness or precision, nor according to the rules of grammatical con *98 struction and correct composition. But giving to its language a fair and reasonable interpretation, there is no difficulty in ascertaining its true meaning, and that it is substantially responsive to all the requirements of the statute. The expression in the inquest that the jurors “ proceeded to view the premises, to wit, the mill to be erected,” may be an inaccurate one, or it may be that the mill-house had in fact been erected, though leave for the dam had not been yet obtained. But either way, it certainly cannot vitiate. With regard to the ownership of the lands of the persons named in the inquest, the fair construction is not that Grallahue was the owner of those lands, but that the jury proceeded to view the premises; also the land above and below the abutment; also the lands of the persons named; and that those persons were the owners of the lands above and below the lands of Grallahue, which it was supposed might probably be overflowed or damaged; and a finding that their lands would not be overflowed, and that no damage would accrue to any of the proprietors, is substantive compliance with the statute. The finding “ that fish of passage or ordinary navigation will not be obstructed is precisely equivalent to a finding that neither will be so obstructed. The finding that the dam may be erected eight feet high, if irregular, could do no harm; but' in fact it was altogether proper and correct for the jury to specify the height of the dam of which they were undertaking to describe the probable consequences and effects, inasmuch as neither in the petition nor in the order of the court nor in the writ had the height of the proposed dam been specified. Morgan v. Banta, 1 Bibb’s R. 579. And the judgment of the court giving such leave, should specify the .height of the dam allowed, and in this case is to be understood as allowing a dam of the height mentioned in the inquest of the jury. There being thus no substantial defect apparent *99 on its face, the county court properly overruled the motion to quash the proceeding.
Upon their application for a continuance of L ± r # case, the contestants did not show any sufficient reason to entitle them to it; and if they had, still they had ample opportunity of offering, and perhaps did offer, the testimony of the witness, Dr. Adams, on the trial in the Circuit court; and the want of his testimony on the trial in the County court cannot now be the subject of complaint here.
With regard to the testimony of the physicians and others, touching the probable injurious effects of the erection of the dam on the health of the neighborhood, set out in the second bill of exceptions taken on the trial in the County court, it may be said to be at least very unsatisfactory. But however that may be, the Circuit court afterwards passed upon that question, upon full evidence, and to its opinion upon it no exception has been taken. And as the County court and the Circuit court were both satisfied upon that point, this court can but take it for granted that the proofs showed the health of the neighborhood would not be annoyed.
It is objected that the judgment of the court giving leave to erect the dam, by the provision which it contains requiring the applicant to keep a ferry boat at the crossing of the road, shows that the effect of the dam would be to drown a ford, and that for that reason the leave should not have been granted. And the case of Morgan v. Banta, 1 Bibb’s R. 579, is referred to in support of the position. It is true the opinion of the court in that case was to the effect, that if, on an application to build a dam, it appeared that the neighborhood was already sufficiently supplied with mills, the fact that a public road was likely to be obstructed by it would be a sufficient reason for refusing the application. But it is to be observed that the Kentucky *100 statute concerning mills, with reference to which the court in that case was speaking, unlike ours, (at this day,) contained no provision authorizing the court to lay the party under conditions for preventing impediments to the convenient crossing of the stream on which the dam is to be erected. 2 Morehead’s and Brown’s Digest, 1215. In the case of Morgan v. Banta, the party offered to submit to terms that would secure the uninterrupted crossing of the stream, but the court held that it had no power either to impose such terms or to enforce them. At the revisal of 1819, a provision was introduced into our Code expressly authorizing the court to lay the party under conditions for that purpose, thereby clearly recognizing the right to grant the leave even in cases in which the effect of the dam might be to obstruct a ford ; the party being laid under proper conditions to remedy the inconvenience. And as in this case both the County court and the Circuit court have held, upon the proofs, that a ferry boat at this place will sufficiently remedy any impediment to the crossing of the creek, this court will presume that they acted rightly, and prescribed a proper and sufficient expedient for the purpose, nothing being shown to the contrary.
It is true, exception is taken to the terms in which the duty of keeping a boat is prescribed, and it is urged that it is made a duty merely personal to Gallahue himself, and does not extend to his heirs or alienees. And it is asked, how long is it to last ? And if Gallahue die or alien the property, who is bound ? Again, it is said, that the order of the court does not prescribe the kind of boat to be kept; whether a flat boat, skiff or canoe ; and though it requires the applicant to keep a boat, it does not require him to ferry the public over. It may be questioned whether this is not rather a matter of police regulation, within the *101 discretionary powers of the court, touching the exercise of which the contestant can scarcely be permitted to raise questions in this form. But however this may be, I do not think the exception maintainable. The duty to keep up a ferry boat is not merely personal to the grantee of the privilege of erecting the dam; it is a condition and incident of the grant, and attaches and adheres to it, into whose hands soever it may pass. The party who takes the dam, takes it cum onere; and he who undertakes to keep it up, must take care to keep up the ferry boat also at his peril. And if he fail to do so, the law provides ample remedy for the neglect. The kind of boat obviously intended by the order to be kept up, is that which the exigencies of the travel and trade on the road shall require, whether it be a flat, skiff or canoe. And the duty of keeping it up as a ferry boat, plainly and manifestly implies the duty of ferrying the public over the stream without charge, compensation for the service having been already allowed to the applicant in the privilege granted him to erect and keep up the dam.
Upon the whole case, I am of opinion that the record shows no error to the prejudice of the appellant, and that the judgment of the Circuit court should be affirmed, with costs to the appellee.
The other judges concurred in the opinion of Lee, J.
Judgment affirmed.